OPINION OF THE COURT — by
chibs' justice TURNER.
The question raised in this case as to the chara'^er of the instrument sued on, has iong since been settled in this Co^c, as recollected by myself and many members of the Bar, and has been the rule in some of the circuits ever since, viz: that an instrument declared on as a sealed instrument» must, on its face, purport to be such — as, “witness my hand and seal,” or other words, shewing that the maker or obligor intended to make a sealed instrument, and that, in the absence of such terms in the body of the instrument, the scroll representing a seal, will not make it a sealed instrument; and we are not disposed to alter that decision: Justice does not require it. Indeed, if we were to sustain both positions, I am not aware that any serious injury would result from it more than might happen in case the practice should be uniform. From the loose practice of persons contracting, in giving notes, &c. it Í3 difficult, if not impossible, to lay down a rule which will govern every case. A view of the note in this case is sufficient to justify this remark: there is a promissory note in form.; two .persons sign it; one has a scroll annexed, and the other has none.
Judges Cage and Nicholson concurred.
OPINION OF THE
How. JOHN BLACK.
The first question raised by the demurrer is, whether the instrument *466 declared on as a specialty is to be considered such, having a scroll annex** ed, instead of a seal of wax, or other substance capable of receiving an im„ pression, without words in the body of the instrument itself, declaring the intention of the maker to make a sealed instrument. The statute of this State, Revised Code page 122, enacts that “any instrument to which the person making the same shall affix a scroll by way of seal, shall be adjudged and holden to be of the same force and obligation as if it were actually sealed.
This statute places a scroll on the same footing, and gives to it the same validity as if a seal of wax or wafer had been affixed with all due solemnity; and I think a fair construction of the statute would be to consider every scroll annexed as a seal of wax — and if the instrument would be á specialty if a wax seal had been affixed, to give to a scroll the same eSect. A general view of all the authorities on the subject of deeds, convinces me that at common law an instrument in writing, sealed and delivered between the parties, would be -talid as a specialty, although there be no memorandum or note made in the body of the deed, stated the signing, sealing, & c.; nor would it be a specialty on account of such note or memorandum, (usually commencing in enjus rei testimonium) unless the seal were actually affixed. This is nothing more than a memorandum, made in testimony of a fact done, and is not necessary to the efficacy of the fact itself: it is not the essence of the deed, and no material part of it. The fixing the seal is the act itself for the commemoration of which it is inserted.'
If an instrument in writing would be considered a specialty when sealed with wax, without any statement thereof on the face of the instrument itself, I should suppose that it would irresistibly follow that a scroll having the same effect, “force and obligation,” by our statute, with such seal, would make it a specialty. The reasons given by the Supreme Courts of Virginia and Alabama why they will not, under enactments similar to our own consider a scroll as a seal unless there are words embodied in the instrument shewing the intention of the parties signing to make a specialty, are, according to my conception of them, legislative rather than judicial reasons. They say the facility with which a holder could commit forgery .by fixing a scroll, and thereby alter the liabilities of the maker, would be too .great.
*467 This might have been a good reason why the Legislature ought not to have passed such an act, or to shew that they should have guarded it with some reservation and restriction, but is, I apprehend, no reason why the Court ought not to give all the effect to a scroll which the words of the act itself seem to require. Besides, I think the apprehensions of the Courts are groundless — for it would be at least as easy to detect a forgery of a scroll as of a common seal, which, in the general, is nothing more than a piecd of paper fastened to the end of a man’s name with a bit of wafer. It has been said that unless this rule were adopted, any flourish at the end of a signature, or any where on the note, might be taken for a seal; but it may be answered, that, in the language of the statute, that the party did affix “a scroll by way of seal,” and when that is apparent, it must have the «‘force and effect of a seal;” and I should think that such intention might be as well gathered from the act affixing the scroll, as from a declaration in the instrument that it was done. The word (seal) within the scroll, or {L. S.) clearly denotes the intention to make a scroll.
Great importance in former days was attached to the act of. fixing the seal on account of the supposed solemnity and deliberation with which it was done; and if we were to judge of the deliberateness of some grantors of former times by the size of the seals they appended to their instruments! there would be much apparent ground for supposing it to be great. Buj in the present day wb«u these ponderous appendages have dwindled down to nothing more than a little paper and wafer, I see no more solemnity and deliberation in fixing a common seal than in making a scroll. This decision has apparently been dictated rather by that repugnance which many feel to an innovation on such an immemorial, though at the present day, rather useless custom, than by a strict interpretation of the will of the Legislature derived from the words of the act itself — and savours of a desire to have something more, in order to give the instrument something which will approach nearer the solemnity of sealing than the act of Assembly apparently required.
This question is said by one of my brother Judges to have been settled in this Court by an adjudicated case some time since; and the practice of the country has become conformable to it on that account. I will assent *468 that the rule shall not be altered) although I am unable to perceive the reasons upon which it is founded.
The second point raised by the demurrer is whether debt will be on this instrument, which is as follows: — “On the first day of January, 1829, I promise to pay Edward Mitchell the sum of eight hundred and thirty-three dollars, payable in cotton at nine cents, with the benefit of the rise at the time, to myself, which cotton shall, on that day, be delivered at Vicksburg» to him or his agent, in good order, and shall class with prime cotton, which if not punctually paid, I bind myself to pay legal interest of the State on the amount from the date hereof. Given under my hand this 29th day of December, 1827.
(Signed) WYLIE BOHANNON. ' (Seal.)
The draft promises to pay $833, payable in cotton, and stipulates the price and quality of the cotton, and place of delivery. If the contract had stopped here, I have no doubt but this would be the proper and fair interpretation of the contract — i. e., the draft promised to deliver so much cot” ton as would amount to the sum of $833, at the time and place mentioned. He would have been bound to pay in cotton, and the sum mentioned in the note would only serve to ascertain the quantity of cotton which might be more or less, as the price might be higher or lower. The defendant would not have been discharged by tender of tW money — for the promisee migh* insist on the cotton. But the stipulation for the payment of the interest from date, (a circumstance overlooked by counsel) appears to alter the effect of this contract. He has stipulated the damages: in the event of non delivery of the cotton, he is to pay legal interest from date of note. It appears the defendant has reserved to himself the privilege of delivering the cotton, or of paying the principle and interest. Could the plaintiff, on de. fendant’s failing to deliver the cotton, have refused the principle and inte, rest? That is what he was entitled to demand, on defendant’s failing in de_ livery of cotton — and debt will lie for the recovery. I consider this circumstance as varying the case from those cited by defendant’s counsel, in 1 Bibb, 487 — 2 Bibb 584 — Hardin 118: which cases were determined on the ground that the defendants (the promisors) were bound to deliver the property, and that an offer of the amount in money would not have discharged them; Therefore, these were considered as contracts for the deli *469 very of property — not for the payment of money; and debt cannot be maintained in such casos.
The judgment must be reversed, because the court below erred in overruling so much of the demurrer as objected to this instrument as a specialty. The demurrer to plaintiffs declaration sustained; but being of opinion that debt may be maintained on this writing, the cause will be remanded with leave to amend.
Judge Nicholson concurred.